**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION**

| | | |
|---|---|---|
| LAVANEICER HILLMAN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CV 124-096 |
| | * | |
| REMAIN AT HOME SENIOR CARE, | * | |
| | * | |
| Defendant. | * | |
| | * | |

**O R D E R**

Before the Court is Defendant's motion for summary judgment on Plaintiff Hillman's claims for race discrimination and retaliation in violation of 42 U.S.C. § 1981. (Doc. 17.) For the following reasons, Defendant's motion for summary judgment is **GRANTED**.

**I. BACKGROUND**

Plaintiff was employed by Defendant as a Licensed Practical Nurse from December 3, 2016 to June 25, 2020.[1] (Doc. 22-1, at 1, 6.) Plaintiff was assigned to provide care to a former patient, Ms. S, from the beginning of her employment until April 2020. (Id.

---

[1] The Parties dispute the date of termination. Defendant's Separation Notice indicates the termination was effective on June 25, 2020, the day after Plaintiff was to submit for drug screening. (Doc. 22, at 11; Doc. 22-1, at 5-6.) However, Plaintiff received an email terminating her employment on June 26, 2020, and another email on June 29, 2020, with the separation notice attached. (Doc. 22-1, at 6; Doc. 19-1, at 30-31; Doc. 26, at 7.)

at 2-3.) During this period, Ms. S watched films stating the N-word, remarked "this sure is a dark one," and had "family members [who] would look Plaintiff right in the face and not speak with her." (Doc. 26-1, at 1-2.)

In March and April 2020, during the COVID-19 Pandemic and while caring for Ms. S, Plaintiff started suffering from anxiety and considered applying for short-term disability but never did. (Doc. 22-1, at 3.) Plaintiff expressed concerns related to the COVID-19 pandemic and was worried about exposure to COVID-19 in Ms. S's household. (Doc. 20, at 3.) Around April 2020, Plaintiff requested to switch patients, and Defendant reduced Plaintiff's hours and no longer scheduled her to work for Ms. S. (Doc. 22-1, at 4; Doc. 20, at 3; Doc. 22-3, at 1; Doc. 26-1, at 3-4.) On May 7, 2020, Plaintiff emailed Ms. Young, her case manager, a formal request to transfer to another case or position due to being a "high risk person with health issues" and for "mental and emotional reasons." (Doc. 26-1, at 5-6.) Plaintiff further stated she "pursu[ed] to retain [her] employment with this company." (Doc. 17-2, at 3; Doc. 22-1, at 4.) Defendant granted Plaintiff's request to transfer and assigned her to a "float pool," where she would work with other clients. (Doc. 22-1, at 4.) However, Plaintiff rejected those assignments because "mentally [she] was not doing well," and she was "not in a place to care for anyone." (Id. (alterations in original).) Plaintiff's physician prescribed

2

her an anti-anxiety medication that rendered her unsafe to drive, of which she made Defendant aware. (Doc. 26-1, at 4-5.) On May 21, 2020, Defendant offered Plaintiff the opportunity to apply for leave under the Family and Medical Leave Act, but Plaintiff never applied for a medical leave of absence. (Id. at 9.) On June 17, 2020, Defendant informed Plaintiff she was required to obtain a doctor's note before working again. (Id.)

On June 24, 2020, Defendant selected six employees for a random drug screening in accordance with Defendant's Drug-Free Workplace Policy (the "Policy"), and Plaintiff was one of the six selected. (Doc. 22-1, at 5.) Defendant claims, and Plaintiff disputes for lack of documentation, that out of the six employees selected, four were Caucasian and two, including Plaintiff, were African American. (Id. at 6-7.) All except for Plaintiff submitted to the screening and passed the drug test. (Id. at 7.) Because Plaintiff failed to appear for the drug test, Defendant terminated her employment in accordance with the Policy on June 25, 2020. (Id. at 6.) Plaintiff argues the asserted reason for her termination is pretextual. (Id.) Defendant documented a Separation Notice stating Plaintiff's employment ended on June 25, 2020, and emailed a copy to Plaintiff on June 29, 2020, stating "the separation is effective immediately." (Id.; Doc. 19-1, at 30-31.)

3

The Policy explicitly applies "to all employees." (Doc. 20-1, at 2.)  In the "Required Testing" section of the Policy, Defendant states "[i]t is the policy . . . to maintain a drug-free workplace at all times by requiring employees to participate in random, ongoing drug screens.  Drug tests are unannounced and every employee has an equal chance of being selected for testing." (Id. at 3.)  The Policy further states that "[e]mployees who refuse to cooperate in required tests or who use, possess, buy, sell, manufacture or dispense an illegal drug in violation of this policy will be terminated." (Id. at 5.)  Defendant maintains that "[r]ace had no impact on the selection or drug screening process." (Doc. 22-1, at 7.)  When Plaintiff began employment with Defendant, she signed an acknowledgment form that she received Defendant's handbook and policies.  (Doc. 19, at 9; Doc. 20, at 2.)

On June 25, 2024, Plaintiff brought this action, asserting claims for race discrimination and retaliation.  (Doc. 1, at 3-4.)  On June 25, 2025, Defendant filed a motion for summary judgment.  (Doc. 17.)  On July 16, 2025, Plaintiff responded. (Doc. 22.)  On August 13, 2025, Defendant replied.  (Doc. 26.)

## II. LEGAL STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Facts are

4

"material" if they could "affect the outcome of the suit under the governing [substantive] law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and a dispute is genuine "if the non[-]moving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001) (citation omitted). The Court must view factual disputes in the light most favorable to the non-moving party and must "draw all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation, internal quotation marks, and internal punctuation omitted). The Court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court, by reference to materials in the record, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the non-movant bears the burden of proof at trial, the movant has two options as to how it can carry its initial burden. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-16 (11th Cir. 1993). The movant may show an absence of evidence to support the nonmovant's case or provide affirmative evidence demonstrating the nonmovant's inability to prove its case at trial. Id.

If the movant carries its initial burden, the non-movant must "demonstrate that there is indeed a material issue of fact that

5

precludes summary judgment." Vaughn v. Ret. Sys. Of Ala. 856 Fed.Appx. 787, 789 (11th Cir. 2021) (citation omitted). The nonmovant must tailor its response to the method by which the movant carries its initial burden. Fitzpatrick, 2 F.3d at 1116-17. For example, if the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Id. at 1116. On the other hand, if the movant shows a lack of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116-17 (citations omitted). The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk of Court provided Plaintiff notice of the motion for summary judgment, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 21.) For that reason, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985), have been

6

satisfied.   The time for filing materials in opposition has expired, the issues have been thoroughly briefed, and the motion is ripe for consideration.

### III. MOTION FOR SUMMARY JUDGMENT

Defendant moves for summary judgment on all counts and asserts the following: (1) Plaintiff cannot make a prima facie case of discrimination; (2) Plaintiff cannot make a prima facie case of retaliation; (3) Defendant can articulate legitimate nondiscriminatory and nonretaliatory reasons for the challenged employment action; and (4) Plaintiff cannot show pretext or a convincing mosaic of circumstantial evidence to establish a genuine issue of material fact regarding the discrimination and retaliation claims.   (Doc. 17-1, at 6-17.)   The Court addresses the claims in turn.

### A. Discrimination

Plaintiff brings a claim for race discrimination in violation of 42 U.S.C. § 1981 and claims Defendant "terminated her employment based on her race."   (Doc. 1, at 4.)   "Section 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts." Jenkins v. Nell, 26 F.4th 1243, 1249 (11th Cir. 2022) (citations

7

omitted).[2]   "A plaintiff may use either direct evidence or circumstantial evidence to show race discrimination."   Id. (citation omitted).   Direct evidence is "evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1358 (11th Cir. 1999) (citations and quotation marks omitted).   Direct evidence must "prove[] the existence of discriminatory intent without inference or presumption."   Jefferson v. Sewon Am., Inc., 891 F.3d 911, 921 (11th Cir. 2018) (alterations adopted and citation omitted).

Defendant argues Plaintiff presents no direct evidence of discrimination.   (Doc. 17-1, at 5-6.)   Plaintiff agrees that she relies on circumstantial evidence to prove her claim under a McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) analysis. (Doc. 22, at 5-6.)   Thus, the Court turns first to the McDonnell Douglas framework and then to the convincing mosaic standard for Plaintiff's race discrimination claim.

## 1. McDonnell Douglas Standard

The McDonnell Douglas framework generally governs the use of circumstantial evidence in employment discrimination cases.   411

---

[2] "The elements of a claim of race discrimination under 42 U.S.C. § 1981 are also the same as a Title VII disparate treatment claim in the employment context."   Jenkins, 26 F.4th at 1249 (citing Rice-Lamar v. City of Ft. Lauderdale, 232 F.3d 836, 843 n.11 (11th Cir. 2000)).

U.S. 792.   Under McDonnell Douglas, Plaintiff has the burden to establish a prima facie case of discrimination.   Jenkins, 26 F.4th at 1249.   To establish a prima facie case of discrimination, Plaintiff must show: "(1) [s]he belongs to a protected class; (2) [s]he suffered an adverse employment action; (3) [s]he was qualified to perform the job in question; and (4) [her] employer treated 'similarly situated' employees outside [her] class more favorably."   Id. (citation omitted).   If Plaintiff establishes a prima facie case, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions."   Lewis v. City of Union City, 918 F.3d 1213, 1221 (11th Cir. 2019) (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). If defendant carries its burden, "plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination, an obligation that 'merges with the plaintiff's ultimate burden of persuading the factfinder that she has been the victim of intentional discrimination.'"   Id. (quoting Burdine, 450 U.S. at 256 (alterations adopted)).

Defendant argues Plaintiff cannot establish a prima facie case of discrimination because she was not qualified to perform her job, and she cannot show Defendant treated similarly situated workers outside of her race more favorably.   (Doc. 17-1, at 7-8.) Defendant does not dispute Plaintiff was a member of a protected class and was subject to an adverse employment action.   (Id.)

9

Further, Defendant argues it had a legitimate, nondiscriminatory reason for terminating Plaintiff's employment, and she cannot show pretext. (Id. at 14-17.)

### a. Prima Facie Case

As to the prima facie case, Defendant only disputes the third and fourth elements, arguing Plaintiff was not qualified to perform her job and cannot show Defendant treated similarly situated workers outside of her race more favorably. (Id. at 7-8.)

### i. Qualified to Perform the Job

Defendant argues Plaintiff was not qualified for her role because she voluntarily removed herself from the workforce due to COVID-19 related anxiety and stress. (Id. at 7.) Leading up to her termination, Defendant claims Plaintiff was unwilling to perform her job duties, making her unqualified for her role at the time of her termination. (Id.) Plaintiff argues she remained qualified for her role during the entirety of her employment because her credentials never changed. (Doc. 22, at 6.) Plaintiff asserts Defendant took her off the schedule and required a doctor's note before she could return. (Id.) Defendant argues Plaintiff "voluntarily removed herself from working" and herself admits that "she became mentally unstable and felt that she was not able to work at the beginning of the pandemic." (Doc. 26, at 2-3.)

The Court finds Plaintiff was qualified for the role at the time in question. Plaintiff worked for Defendant for over three

10

years and voluntarily requested a transfer due to her anxiety. (Doc. 22-1, at 1, 3, 6.) There is no evidence that Plaintiff's credentials or abilities had materially changed at the time of her termination. Defendant has failed to provide evidence of specific reasons that Plaintiff is not qualified other than voluntarily requesting a transfer, which does not affect her qualifications. (Doc. 17-1, at 7.) Further, Defendant alleges to have terminated Plaintiff due to her failure to submit to a drug test and not for a lack of qualification or due to her "health issues." (Doc. 22-1, at 6.) Thus, the Court finds Plaintiff was qualified to perform the job in question.

### ii. Similarly Situated Employees

Defendant next argues that Plaintiff cannot prove that it treated similarly situated employees outside of her race more favorably regarding her termination for violating the Policy. (Doc. 17-1, at 8.) The Eleventh Circuit is clear that "[f]ederal courts do not sit as a super-personnel department that reexamines an entity's business decision." Lewis v. Ga. Power Co., No. 22-11395, 2023 WL 1818924, at *3 (11th Cir. Feb. 8, 2023) (quoting Chapman v. Al Transp., 229 F.3d 1012, 1030 (11th Cir. 2000)).

> Instead, to determine whether a comparator was treated more favorably, courts in this circuit examine the material differences between the plaintiff and comparator's treatment that are capable of evaluation by a court without personnel or industry expertise – such as whether they were both cited for misconduct,

11

> investigated, reprimanded, terminated, and provided the same opportunities at severance.

Whiteside v. PCC Airfoils LLC, No. 5:21-CV-62, 2023 WL 2787977, at *5 (S.D. Ga. Apr. 5, 2023) (citations omitted).

Defendant argues Plaintiff fails to identify any employee that refused to report for a random drug screening and was not fired as a result. (Doc. 17-1, at 8.) Further, Defendant states the six employees, four Caucasian and two African American individuals, called to the same drug screening all showed up for testing, except Plaintiff. (Id.; Doc. 22-1, at 6-7.) As a result, Plaintiff was the only one terminated. (Doc. 17-1, at 8; Doc. 22-1, at 6-7.) Plaintiff argues that because she was on leave during the drug screening, she should not have been called for testing. (Doc. 22, at 7.) Further, Plaintiff states that she lacked a doctor's clearance to drive herself to the drug screening, which Defendant was aware of, and that she had never been given the written Policy. (Id. at 9.) As a result, Plaintiff argues she need not show "employees subject to the same policy" were treated differently because "the policy itself excluded those on leave, so by definition there is no true comparator in Defendant's six-employee sample." (Id. (internal quotation omitted).) She thus asserts she can still proceed by showing a convincing mosaic of circumstantial evidence, which the Court addresses below. (Id.)

12

Nonetheless, Defendant argues Plaintiff's prima facie claim fails because she lacks comparator evidence. (Doc. 26, at 3.)

The Court finds Plaintiff failed to identify a similarly situated employee to satisfy the required element of her race discrimination claim. Although Plaintiff claims there is "no true comparator in Defendant's six-employee sample" because she was exempt from drug testing while on leave, Plaintiff must nonetheless "identify a specific comparator for the fourth element – not conclusory statements that she was treated differently than members outside of her protected class." (Doc. 22, at 7); McKenzie v. S. Nuclear Operating Co., No. CV 120-157, 2023 WL 2403778, at *5 (S.D. Ga. Mar. 8, 2023) (citations and quotation marks omitted). Further, the Policy states "every employee has an equal chance of being selected for testing" with no mention of employees on leave and that "[e]mployees who refuse to cooperate in required drug tests . . . will be terminated." (Doc. 20-1, at 3, 5.) When Plaintiff was selected for drug testing, she was the only one who refused the drug test, and thus, the only one fired at that time. (Doc. 17-1, at 8.) Because Plaintiff cannot point to another employee outside of her protected class that was selected for drug testing and terminated for failing to comply, Plaintiff fails to satisfy the fourth element for a prima facie case for race discrimination.

13

*b. Legitimate, Nondiscriminatory Reason and Pretext*

Because Plaintiff fails to show a prima facie case for race discrimination, the Court need not evaluate Defendant's legitimate, nondiscriminatory reason for its actions or whether the proffered reason was merely a pretext for unlawful discrimination. However, in an abundance of caution, the Court finds that Defendant has rebutted the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for Plaintiff's termination. Thus, even if Plaintiff put forth sufficient evidence of her prima facie case, her claim would still fail.

In determining whether a defendant has provided a sufficient reason for termination, the burden is "exceedingly light." Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 769-70 (11th Cir. 2005) (citation omitted). "An employer must simply advance an explanation for its action that is not discriminatory in nature." Lee v. Safe-Dry Carpet and Upholstery, No. 20-14275, 2021 WL 3829028, at *3 (11th Cir. Aug. 27, 2021) (citation omitted). These beliefs "might legitimately motivate a reasonable employer to terminate an employee." Berry v. Crestwood Healthcare LP, 84 F.4th 1300, 1308 (11th Cir. 2023) (citation omitted); see also Silvera v. Orange Cnty. Sch. Bd., 244 F.3d 1253, 1261 (11th Cir. 2001) ("Pretext means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action"

14

(citation omitted)). Thus, Plaintiff must "address [this] reason head on and rebut it." Berry, 84 F.4th at 1307-08 (internal quotations and citation omitted).

Once "the defendant [has carried] this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) (citation omitted). To show pretext, a plaintiff must show "*both* that the [employer's] reason was false, *and* that discrimination was the real reason" for the adverse action. Id. at 515. "An employee cannot rebut a reason by simply quarreling with the wisdom of that reason." Patterson v. Ga. Pac., LLC, 38 F.4th 1336, 1352 (11th Cir. 2022) (citation and internal quotations omitted).

Defendant argues that even if Plaintiff established a prima facie case of discrimination, it rebutted the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for the termination. (Doc. 17-1, at 14.) Defendant consistently argues Plaintiff violated the Policy and was terminated in accordance with the Policy. (Id.) Further, Defendant points to evidence that Plaintiff admitted her termination was due to her violation of the Policy. (Id.; Doc. 19, at 29.) Plaintiff argues the termination reason was pretext because she never received a copy of the Policy, a jury could find

15

the Policy exempts employees who are not fit for duty, and Defendant reduced her hours after she requested to switch from Ms. S to a different client. (Doc. 22, at 10-11.) In response, Defendant argues Plaintiff signed an Acknowledgment of Receipt of Remain At Home's Handbook, the Policy's plain language states it applies to every employee at all times, and it reduced her hours after she requested a transfer to a new client due to "health issues." (Doc. 26, at 7; Doc. 19, at 9.)

The Court finds the Policy clearly states "every employee has an equal chance of being selected for testing" and "[e]mployees who refuse to cooperate in required tests . . . will be terminated." (Doc. 20-1, at 3, 5.) Further, Plaintiff admitted that she signed an acknowledgement stating she received the Defendant's handbook and policies, including the Policy. (Doc. 19, at 9.) Based on this evidence, the Court finds Defendant provided a sufficient reason for Plaintiff's termination, and Plaintiff has failed to create an issue of material fact as to pretext. The Court now analyzes Plaintiff's evidence for her race discrimination claim under the convincing mosaic standard for summary judgment.

### 2. Convincing Mosaic

Plaintiff argues the convincing mosaic of evidence supports her discrimination claim. (Doc. 22, at 7.) "[T]he convincing mosaic metaphor offers an alternative to plaintiffs unable to

16

succeed through the McDonnell Douglas framework." Ossmann v. Meredith Corp., 82 F.4th 1007, 1020 (11th Cir. 2023) (citations omitted). A plaintiff can prove her race discrimination claim with a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." Tynes v. Fla. Dep't of Juv. Just., 88 F.4th 939, 946 (11th Cir. 2023) (citations omitted). "A plaintiff may establish a convincing mosaic by pointing to evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) systematically better treatment of similarly situated employees, and (3) pretext." Jenkins, 26 F.4th at 1250 (citation and quotation marks omitted). But "the convincing mosaic inquiry is identical to the final stage of the McDonnell Douglas framework: both ask whether there is enough evidence for a reasonable jury to infer intentional discrimination." Ossmann, 82 F.4th at 1020 (citation omitted). The Court can "look beyond the prima facie case to consider all relevant evidence in the record to decide the ultimate question of intentional discrimination." Tynes, 88 F.4th at 947. "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." Jenkins, 26 F.4th at 1250 (citation and quotation marks omitted).

17

Defendant argues Plaintiff has not presented a convincing mosaic of circumstantial evidence such that a jury could infer intentional discrimination because it produced evidence that it terminated Plaintiff pursuant to the Policy and not based on race. (Doc. 17-1, at 9.)  Plaintiff claims she "may proceed by showing pretext through a convincing mosaic of circumstantial evidence," relying on the following circumstantial evidence: "[t]he timing of her selection immediately after her protected complaints," "Defendant's shifting termination dates," "the withholding of its own policy," and "the internal admission that leave should have removed her from the pool . . . together with Defendant's repeated failure to in any way address the racially hostile work environment."  (Doc. 22, at 7.)

The Court does not find that these instances of alleged discrimination, viewed in the light most favorable to Plaintiff, present a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by Defendant.  As stated above, the Policy subjects all employees to drug testing at random, of which Plaintiff was aware based on her signed acknowledgement form.  (Doc. 19, at 9.)  Although Defendant selected Plaintiff for drug testing over a month after she requested a transfer, Plaintiff was already subject to drug testing based on the Policy and fails to provide evidence that the drug testing was not random.  (Doc. 22-1, at 2.)  Finally, Plaintiff

18

alleges Defendant changed the termination date because the Separation Notice indicates the termination occurred on June 25, 2020, but Defendant emailed Plaintiff on June 29, 2020 a copy of the Separation Notice and stated "the separation is effective immediately." (Doc. 22, at 11; Doc. 19-1, at 30-31; Doc. 26, at 7.) This email did not change or shift the termination date from June 25, 2020 to June 29, 2020 because the termination was effective immediately from the date of the Separation Notice.

Plaintiff's general accusations are insufficient to meet the standard of a convincing mosaic of evidence because she fails to provide specific allegations of discrimination against her. The Eleventh Circuit requires significantly more evidence to find a plaintiff presented a convincing mosaic. See Jenkins, 26 F.4th at 1250-51 (finding convincing mosaic of discrimination where Caucasian plaintiff showed he committed same violation as another non-Caucasian employee that stayed employed, eighteen employees left department after defendant took over, defendant mistreated three other Caucasian employees, defendant had close relationship with human resources, defendant made racially based comments about Caucasian employees, plaintiff declined to change accident report after defendant asked him to, and defendant presented shifting reasons for terminating plaintiff); Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328-46 (11th Cir. 2011) (finding convincing mosaic of discrimination when plaintiff showed defendants had

19

motive to discriminate, treated African American and Caucasian employees differently several times and tracked race when making disciplinary decisions).  Therefore, Plaintiff's discrimination claim also fails under the convincing mosaic of evidence standard. Based on these findings, Plaintiff has failed to make out a prima facie case of discrimination, and a reasonable jury could not infer intentional discrimination based on the evidence viewed most favorably to Plaintiff.  Defendant's motion for summary judgment is **GRANTED** as to Plaintiff's race discrimination claim.

## B. Retaliation

Plaintiff also brings a retaliation claim under § 1981, claiming she engaged in the protected activity of reporting racial harassment and discrimination to her supervisor, and Defendant reduced her work hours and ultimately terminated her employment in retaliation.  (Doc. 1, at 4.)  Defendant argues Plaintiff cannot establish a prima facie case of retaliation or otherwise offer sufficient evidence to create a genuine issue of material fact by showing pretext or a convincing mosaic of circumstantial evidence. (Doc. 17-1, at 10-17.)

### 1. McDonnell Douglas Standard

The Court first analyzes Defendant's motion for summary judgment under the McDonnell Douglas standard.

20

### a. *Prima Facie Case*

"A plaintiff establishes a prima facie case of retaliation by showing that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action." Chapter 7 Tr. v. Gate Gourmet, Inc., 683 F.3d 1249, 1258 (11th Cir. 2012) (internal quotations and citation omitted). Defendant argues Plaintiff has not established a prima facie case because she has not established the first and third elements. Thus, the Court turns to those elements. (Doc. 17-1, at 10.)

### i. Protected Activity

First, Defendant alleges Plaintiff cannot show she participated in a protected activity. (Id.) It is true that "not every act by an employee in opposition to racial discrimination is protected." Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 959 (11th Cir. 1997) (citation omitted). An employee engages in a protected activity by opposing "conduct that is made an 'unlawful employment practice' by [§ 1981]." Fields v. Locke Lord Bissell & Liddell LLP, 1:07-CV-2984, 2009 WL 2341981, at *12 (N.D. Ga. July 28, 2009) (quoting 42 U.S.C. § 2000e-2). "To establish that Plaintiff was engaged in a protected activity, she must be able to show that she had a 'subjective good faith belief, as well as an objective, reasonable belief that her employer engaged in an unlawful employment practice when she opposed the

21

practice.'" Ellison v. St. Joseph's/Candler Health Sys., Inc., No. CV417-008, 2018 WL 651341, at *4 (S.D. Ga. Jan. 30, 2018), aff'd, 775 F. App'x 634 (11th Cir. 2019) (quoting Valdes v. Miami-Dade Coll., 463 F. App'x 843, 846 (11th Cir. 2012)).

Defendant argues "Plaintiff may have found her client's home and movie choices" contained offensive language, but the "complained of conduct does not rise to the level of harassment/hostile working environment or race discrimination." (Doc. 17-1, at 11.) Defendant also claims Plaintiff only requested to be removed from Ms. S's schedule due to COVID-19 related issues. (Id.) Further, Defendant argues any complaints Plaintiff allegedly made to her case manager do not constitute protected activity. (Id.) Plaintiff argues she reported the racial slurs and offensive conduct of Ms. S to her case manager on various occasions, and Defendant failed to stop the conduct or investigate the issue. (Doc. 22, at 8.)

Here, the Court finds a genuine issue of fact as to whether Plaintiff reported Ms. S's racial slurs and offensive conduct to her case manager, Ms. Young. Plaintiff testified "I complained about some of the stuff that was going on in the house . . . it was always kind of pushed under the rug and never really addressed because what was always said was 'this is their home.'" (Doc. 19, at 23.) However, even if Plaintiff reported "most times" when Ms. S would watch movies that stated racial slurs as she contends,

22

Plaintiff fails to show she had an objective, reasonable belief that Defendant engaged in an unlawful employment practice when she opposed the practice.  (Id. at 25); see Little, 103 F.3d at 959–60 (finding plaintiff's opposition to a co-worker's racist remark was not a protected activity because plaintiff failed to report it to a supervisor for eight months and could not show an objectively reasonable belief he was opposing an unlawful employment practice).  Plaintiff began caring for Ms. S in December 2016 and did not request a new placement until April 2020 despite the racial conduct allegedly occurring "the entire time Plaintiff worked with the client."  (Doc. 22-1, at 1-2; Doc. 26-1, at 2.)  Plaintiff also admits that Ms. S never called her racially derogatory names nor did anyone affiliated with Defendant use racially derogatory terms towards her.  (Doc. 19, at 25.)  Further, Plaintiff cited health reasons and mental and emotional issues in her formal request to be removed from Ms. S's schedule instead of unfair treatment because of her race.  (Doc. 22, at 2-3); see Wiggins v. Univ. Hosp., No. CV 117-026, 2018 WL 4259245, at *8 (S.D. Ga. Sept. 6, 2018) (finding plaintiff did not object to an unlawful employment practice where she never complained about being treated unfairly because of her race or color).  Thus, the record does not indicate that a rational jury could find Plaintiff had an objective belief that Defendant was engaging in an unlawful employment practice when Plaintiff opposed Ms. S's racist conduct, so

23

Plaintiff's alleged conduct is not protected activity. Since Plaintiff has not provided evidence of a protected activity, she has failed to make out a prima facie case of retaliation. Nevertheless, the Court considers Defendant's additional arguments.

### ii. Causal Relation

Defendant next claims Plaintiff cannot show the alleged complaints of race discrimination were the but-for cause of her termination. (Doc. 17-1, at 10.)  For the third element of a prima facie retaliation claim, there must be "a causal connection between the protected activity and the adverse action."  Chapter 7 Tr., 683 F.3d at 1258 (citation omitted).  Even if Plaintiff's reports of racist conduct or requests for a new placement were considered protected activities, she would still have to establish that her protected activity was casually related to her termination.  "To establish a causal connection, a plaintiff must show that the relevant decisionmaker was aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated."  Patterson, 38 F.4th at 1351 (citation omitted).

> The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action.  But mere temporal proximity, without more, must be very close.  A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough.  Thus, in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse

24

action, the complaint of retaliation fails as a matter of law.

Thomas v. Cooper Lighting, Inc., 506 F.3d. 1361, 1364 (11th Cir. 2007) (citations and internal quotation marks omitted). Finally, "[a] plaintiff making a [§ 1981] retaliation claim must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." Smith v. City of Fort Pierce, 565 F. App'x 774, 778 (11th Cir. 2014) (citation and internal quotation marks omitted). "Although contesting an unlawful employment practice is protected conduct, the anti-discrimination statutes do not insulate an employee from discipline for violating the employer's rules or disrupting the workplace." Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999) (citations omitted). Thus, "an intervening act of misconduct" can "diminish[] any inference of causation." Henderson v. FedEx Express, 442 F. App'x 502, 507 (11th Cir. 2011) (citation omitted).

Defendant argues Plaintiff cannot present evidence that her complaints of racial discrimination were causally connected to her termination. (Doc. 17-1, at 12.) Defendant argues Plaintiff complained directly to her supervisor, Ms. Young, and not to the employees in the HR and finance departments who effectuated her termination. (Id.) The Court finds the evidence, viewed in the light most favorable to Plaintiff, illustrates the personnel in

25

these departments lacked knowledge of Plaintiff's issues with working for Ms. S, so Plaintiff's complaints could not have been a but-for cause of her termination. Plaintiff argues that "once [Ms. Young] knew, a jury may find, Defendant knew, especially given HR's role and statements and investigation to Plaintiff no[] longer being placed at the house of Ms. S." (Doc. 22, at 9.) Plaintiff also argues the drug test was "a contrived pretext rather than an intervening act that severs causation." (Id.)

The Court finds Plaintiff has failed to establish any causal connection between her protected activity and her termination. First, Plaintiff has offered no evidence that Defendant was aware Plaintiff had complained of Ms. S's racist conduct other than a mere inference that Ms. Young could have informed the HR or finance personnel of the racist conduct. (Doc. 22, at 8-9; Doc. 26-1, at 2.) Ms. Sills, the HR manager, testified that HR was unaware and had no "record of any such complaints." (Doc. 17-1, at 12; Doc. 20, at 4.) Second, the time between Plaintiff's latest possible complaints of Ms. S's conduct in April 2020 and her termination on June 25, 2020 was at least two months, which does not support causation in itself. (Doc. 17-1, at 12-13; see Henderson, 442 F. App'x at 507 (holding that a falsification of a timecard and subsequent termination occurring two weeks after plaintiff complained of protected activity was enough to destroy inference of causation created by temporal proximity where the terminating

26

employee lacked knowledge of the false time card); <u>Drago v. Jenne</u>, 453 F.3d 1301, 1308 (11th Cir. 2006) ("[A] three-month proximity between the protected conduct and the adverse action does not create a jury issue about the causal connection between them.").) Third, Plaintiff offered no evidence otherwise showing that her complaint was the "but-for cause" of her termination. (Doc. 22, at 9.) Defendant clearly states the reason for Plaintiff's termination was her failure to appear for a random drug screening. (Doc. 17-1, at 13; Doc. 22-1, at 6.) Plaintiff's violation of the Policy was an intervening act of misconduct and cause for termination. Thus, the Court finds Plaintiff failed to present evidence tending to show causation and has not established a prima facie case of retaliation based upon race.

### b. Legitimate, Nonretaliatory Reason and Pretext

The Court finds Plaintiff's retaliation claim has already failed; however, as above, out of an abundance of caution, it addresses Defendant's additional arguments.

If plaintiff establishes a prima facie case, "[t]he burden of production then shifts to the employer to rebut the presumption by articulating a legitimate, [non-retaliatory] reason for the employment action." <u>Gogel v. Kia Motors Manufacturing of Georgia, Inc.</u>, 967 F.3d 1121, 1135 (11th Cir. 2020) (citation omitted). If defendant carries its burden, "the plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for

27

unlawful [retaliation], an obligation that 'merges with the plaintiff's ultimate burden of persuading the factfinder that []he has been the victim of intentional [unlawful retaliation].'" Lewis, 918 F.3d at 1221 (quoting Burdine, 450 U.S. at 256) (alterations adopted).

To show pretext, a plaintiff must show that the employer's proffered reason was not the true reason for the employment decision. Brooks v. Cnty. Comm'n of Jefferson Cnty., 446 F.3d 1160, 1162-63 (11th Cir. 2006). To determine whether an employer's reason was pretextual, "[the] inquiry is limited to whether the employer gave an honest explanation of its behavior." Kragor v. Takeda Pharm. Am., Inc., 702 F.3d 1304, 1310-11 (11th Cir. 2012) (citation omitted). Moreover, a plaintiff attempting to show pretext "must meet [the proffered] reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Chapman, 229 F.3d at 1030 (citation omitted). That means that the plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Alvarez v. Royal Atl. Devs., Inc., 610 F.3d 1253, 1265 (11th Cir. 2010) (citation and internal quotation marks omitted). Additionally at the pretext stage, "the plaintiff must once again identify evidence of a causal link between her protected

28

conduct and the employer's adverse action against her." Powe v. Farmers Ins. Exch., 667 F. Supp. 3d 1227, 1244 (N.D. Ga. 2023) (citing Tolar v. Bradley Arant Boult Commings, LLP, 997 F.3d 1280, 1294 (11th Cir. 2021)). This time, however, "the plaintiff must meet the more demanding 'but for' test" to show causation. Tolar, 997 F.3d at 1294. Simply put, to establish pretext, "the plaintiff must show that, based on the evidence, one could reasonably infer that but for her protected conduct the employer would not have taken the alleged adverse action." Id.

Like above, Defendant argues that even if Plaintiff established a prima facie case of retaliation, it rebutted the presumption by articulating a legitimate, nonretaliatory reason for the termination. (Doc. 17-1, at 14.) Defendant offers the same reason: Plaintiff was terminated for failing to appear for a drug test in accordance with the Policy. (Id.) Similarly, Plaintiff responds with the same evidence of pretext as stated above to show Defendant retaliated against her for reporting racial harassment and discrimination to her supervisor. (Doc. 22, at 9.) Plaintiff argues Defendant's reason was pretextual because she never received a copy of the Policy, the Policy exempts employees who are not fit to work, Defendant previously reduced her hours, and the termination paperwork has varying dates. (Id. at 10-11.)

Defendant has consistently pointed to Plaintiff's failure to appear for the drug screening as grounds for Plaintiff's

29

termination, and Plaintiff admitted her termination was due to her violation of the Policy. (Doc. 17-1, at 14; Doc. 19, at 29.) The Court finds Defendant provided a legitimate reason for Plaintiff's termination sufficient to rebut the presumption of retaliation established by Plaintiff's prima facie case, and Plaintiff failed to rebut this reason with evidence of pretext. As stated above, the Policy clearly states the drug testing protocol and risk of termination upon violation. (Doc. 20-1, at 3, 5.) Because the Eleventh Circuit held "that summary judgment should not be granted for failure to demonstrate pretext unless it also reflects a failure to put forward enough evidence for a jury to find for the plaintiff on the ultimate question of discrimination or retaliation," the Court analyzes Plaintiff's circumstantial evidence for retaliation. Ismael v. Roundtree, 161 F.4th 752, 763 (11th Cir. 2025) (citation and internal quotation marks omitted).

2. Convincing Mosaic

In the context of § 1981 retaliation claims, the Eleventh Circuit held that under the convincing mosaic standard, "an employee may prove retaliation with any circumstantial evidence that creates a reasonable inference of retaliatory intent." Berry, 84 F.4th at 1310. "As in other contexts, a plaintiff may avoid summary judgment by presenting a wide range of circumstantial evidence." Ismael, 161 F.4th at 760. In making such determination, the Eleventh Circuit has identified three

30

nonexclusive categories of evidence that may give rise to an inference of unlawful retaliation: "evidence of suspicious timing, ambiguous statements, or other information from which unlawful intent can be inferred; evidence of systematically better treatments of similarly situated employees; or evidence that the employer's justification for its action is pretextual." Berry, 84 F.4th at 1311 (citation omitted). Plaintiff argues that Defendants should not prevail on their motion for summary judgment because she presents a "convincing mosaic" based on the "shifting explanations, policy deviations, and inconsistent termination dates," which "creates the 'convincing mosaic.'" (Doc. 22, at 9 (citation omitted).)

The Court concludes Plaintiff fails to present a convincing mosaic of circumstantial evidence to support her retaliation claim. Even viewed in the light most favorable to Plaintiff, as outlined above, the record does not reflect that Defendant's HR and finance departments, who were involved with Plaintiff's termination, knew of her complaints of racial conduct. (Doc. 26-1, at 2; Doc. 20, at 4.) Plaintiff claims it "may be inferred" that Defendant had knowledge of her complaints because Plaintiff complained to her supervisor. (Doc. 22, at 8-9.) However, Ms. Sills testified that neither she nor HR were aware of such complaints. (Doc. 17-1, at 12.) Without Defendant's knowledge of Plaintiff's actions before her termination, Plaintiff's

31

retaliation claim fails. See Hampton v. Amedisys Ga., LLC, No. 22-11275, 2023 WL 152193, at *4 (11th Cir. Jan. 11, 2023) (finding plaintiff failed to present a convincing mosaic of circumstantial evidence for retaliation claim where the terminating employee did not know plaintiff had complained about the alleged discriminatory animus). Thus, Plaintiff's evidence is insufficient for a prima facie case and to establish the convincing mosaic of circumstantial evidence such that a reasonable jury could find retaliation. Thus, Defendant's motion for summary judgment is **GRANTED** as to the retaliation claim.

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendant's motion for summary judgment (Doc. 17) is **GRANTED.** The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Defendant, **TERMINATE** all pending motions and deadlines, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 23rd day of February, 2026.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

32